UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
A.A. and P,A. on behalf of his Infant
Daughter N.A.

                Plaintiffs,                              COMPLAINT

    -against-                                       DOCKET NO. 23-CV-5591

DELTA AIR LINES, INC.,

                                                            **JURY TRIAL DEMANDED**

                Defendant.
-------------------------------------------------------X

A.A., and P.A. on behalf of his Infant Daughter N.A., (hereinafter "Plaintiffs") appearing by their attorney, Brustein Law PLLC, complain of the defendant Delta Air Lines, Inc. ("Delta" or "Defendant"), as follows:

### PRELIMINARY STATEMENT

**1.** This is a sexual assault case in which plaintiffs A.A. and P.A. on behalf of his Infant Daughter N.A. seek damages to redress the deprivation of their rights. Plaintiffs entrusted Delta to fly A.A. and N.A. safely from New York to Athens, Greece.

**2.** Before taking off and throughout the flight to Greece, Delta flight attendants repeatedly served a drunken male passenger ("intoxicated Delta passenger") alcoholic drinks.

**3.** The intoxicated Delta passenger was noticeably drunk, had loudly vomited in the bathroom and both N.A. and A.A. had repeatedly sought help from the Delta flight attendants to stop serving him alcohol and to change their seats because the intoxicated Delta passenger was inappropriately and unwantedly touching them.

**4.** Despite all of these occurrences, the Delta flight attendants blatantly ignored their pleas for help, continued serving the intoxicated Delta passenger alcoholic beverages and required A.A. and N.A. to sit in a cramped seat next to him.

**5.** The foregoing grossly negligent actions by Delta directly and proximately resulted in A.A.

and N.A. being sexually violated by the intoxicated Delta passenger.

## JURISDICTION AND VENUE

6. Plaintiffs reallege and incorporate by reference each and every averment set in the foregoing paragraphs.

7. This action arises from Delta's negligence in overserving alcohol to an already-intoxicated airline passenger in violation of Federal Aviation Administration ("FAA") regulations 14 C.F.R. § 121.575(b)(1)(2018). Accordingly, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

8. The Court also has jurisdiction over this matter based upon diversity jurisdiction because the Plaintiffs and Defendant are citizens of different states; and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) pursuant to 28 U.S.C.§1332.

9. This Court also has jurisdiction over certain defendants pursuant to 28 U.S.C. §1367. The Court has pendent jurisdiction over plaintiffs' state law claims.

10. The Court has in personam jurisdiction in this matter because Delta maintains "minimum contacts" within the State of New York sufficient to confer "general jurisdiction" to this Court in that Delta operates daily flights to and from John F. Kennedy International Airport in Queens, County New York. Such activity constitutes "continuous and systemic" contacts with the State of New York.

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

12. Plaintiffs demand a trial by jury in this action.

## PARTIES

13. Plaintiff A.A. (hereinafter "A.A..") resides in New York State. She resides with her husband

Plaintiff P.A. and their sixteen year-old daughter Infant Plaintiff N.A.

14. Plaintiff P.A. (hereinafter "P.A..") resides in New York State. He resides with his wife Plaintiff A.A. and their then sixteen year-old daughter Infant Plaintiff N.A.

15. Infant Plaintiff N.A.. (hereinafter "N.A.") at all relevant times was 16 years-old. She resides in New York State with her mother A.A. and father P.A.

16. Defendant Delta is a Delaware, for-profit corporation with its principal place of business in Atlanta, Georgia. At all times material to the averments set forth herein, Delta was engaged in the transportation industry and regularly transacted and continues to regularly transact business in the State of New York, County of Queens.

17. Delta places regulations, policies, and procedures for airline crew on ensuring the safety of customers at an altitude of at least 8,000 feet.

18. Upon information and belief, Delta assigned flight attendants to ensure the safety of passengers onboard Delta Flight 202 from John F. Kennedy International Airport to Athens International Airport on or about July 26, 2022.

19. Upon information and belief, at all relevant times, the Delta flight attendants aboard the flight were employed by Defendant as flight attendants.

## FACTS

20. On or about July 26, 2022, Plaintiff A.A. and her daughter Infant Plaintiff N.A. were onboard Delta Flight 202 ("the Flight") from John F. Kennedy International Airport to Athens International Airport headed to Greece.

21. The Flight was estimated to take eight hours and forty minutes.

22. Plaintiffs A.A. and N.A. were seated in the last row of the aircraft in the middle aisle with three seats across.

23. The Galley was directly behind A.A. and N.A.'s seats, where the Delta flight attendants

prepared food and drink service and sat during the flight.

24. There was no window in their row of seats.

25. A.A. was in the aisle seat, N.A. was in the middle seat, and a woman was assigned the interior seat.

26. The woman assigned the seat next to N.A. was traveling with her husband who was seated separately from her.

27. Prior to take-off the woman assigned the seat next to N.A. switched her seat with a male passenger, the intoxicated Delta passenger, so she could sit next to her husband during the flight.

28. The intoxicated Delta passenger took the interior seat next to N.A.

29. Prior to the plane departing, intoxicated Delta passenger asked a male Delta flight attendant for an alcoholic drink of vodka on the rocks.

30. The male flight attendant and the intoxicated Delta passenger joked about how only an Alcoholic would request an alcoholic beverage so early on a flight.

31. Despite joking about the intoxicated Delta passenger being an alcoholic, the male Delta flight attendant served the intoxicated Delta passenger a vodka on the rocks.

32. Over the next few hours of the flight, the Delta flight attendants continued serving the intoxicated Delta passenger alcoholic drinks.

33. The intoxicated Delta passenger appeared to be getting drunker and drunker as the Delta flight attendants continued serving him alcohol.

34. 14 C.F.R. § 121.575 prohibits Delta from serving any alcoholic beverages to any person aboard any of its aircraft who appears to be intoxicated.

35. Over the first three hours of the flight, the Delta flight attendants served the intoxicated Delta passenger approximately ten vodka on ice drinks.

36. The intoxicated Delta passenger drank every drink the Delta flight attendants served him.

37. Even though the intoxicated Delta passenger was noticeably drunk, the Delta flight attendants

continued serving him alcoholic drinks.

38. Even though the Delta flight attendants had an obligation to stop serving the intoxicated Delta passenger alcohol once he appeared intoxicated, the Delta flight attendants did not stop serving him alcohol.

39. As the intoxicated Delta passenger got drunker, he began trying to speak to 16-year-old N.A. more.

40. N.A. was seated in the middle seat next to the intoxicated Delta passenger.

41. The intoxicated Delta passenger was slurring his speech and noticeably drunk.

42. N.A. attempted to ignore the intoxicated Delta passenger but he kept trying to get N.A.'s attention.

43. N.A. politely asked the intoxicated Delta passenger to stop talking to her.

44. The intoxicated Delta passenger became aggressive to N.A. and began yelling at her.

45. The intoxicated Delta passenger began to ask her nonsensical questions loudly.

46. N.A. tried to get the intoxicated Delta passenger too leave her alone, asking him to stop talking to her and ignoring him.

47. But the intoxicated Delta passenger refused to leave N.A. alone and his body language was scaring N.A.

48. The intoxicated Delta passenger became belligerent and mumbled that he was from Connecticut.

49. The intoxicated Delta passenger demanded to know where 16-year-old N.A. lived.

50. When she responded generically with New York, the intoxicated Delta passenger demanded that N.A. tell him her address.

51. N.A. was frightened by his personal questions, tone and body language and turned her back to him to tell her mother that she was scared.

52. When N.A. turned away from him, the intoxicated Delta passenger began grabbing N.A.,

putting his hands on her back.

53. Both N.A. and A.A. begged the intoxicated Delta passenger to stop talking and touching N.A.

54. They again told the intoxicated Delta passenger that N.A. was only sixteen years old and still in high school.

55. The intoxicated Delta passenger did not care that N.A. was a minor.

56. The intoxicated Delta passenger aggressively reached over N.A. and began pulling and pushing A.A.'s arm.

57. The intoxicated Delta passenger was yelling at both N.A. and A.A. so loudly that the surrounding passengers were reacting.

58. A.A. tried to get help from Delta by calling over the Delta flight attendant from the galley.

59. A.A. told the Delta flight attendant that the intoxicated Delta passenger was very drunk and was making both her and her 16-year-old daughter feel unsafe by yelling, making obscene gestures and touching her daughter inappropriately.

60. The Delta flight attendant did nothing to help and just said "be patient" before walking away.

61. As soon as the flight attendant was gone, N.A. put on headphones to try ignore him, but the intoxicated Delta passenger again began touching N.A., mumbling drunkenly, and forcefully kicking the seats in front of them causing the rows of seats to shake.

62. Suddenly, the intoxicated Delta passenger put his head down for about thirty seconds, before shooting back up and running to the restroom.

63. One of the Delta flight attendants said that she could hear him throwing up in the restroom.

64. While the intoxicated Delta passenger was throwing up in the bathroom, the Delta flight attendants did not try to save A.A. and her daughter N.A.

65. Instead, the woman seated directly in front of N.A. and A.A. turned back to them and asked if they were ok and said "I feel sorry you guys have to deal with that."

66. Again, A.A. called the flight attendant over to inform them of the unsafe environment, the

extreme drunkenness of the passenger and the sexual and physical harassment that was happening on Delta's watch.

67. A.A. demanded that the intoxicated Delta passenger be sent back to his original assigned seat and begged them to stop serving him alcohol. A.A. pleaded with the Delta flight attendant to serve him coffee to sober him up.

68. The flight attendant said "ok" but walked away without helping or doing anything.

69. Another Delta flight attendant walked by and for the third time, A.A. pled for help and begged them to stop serving alcohol to this belligerent and sexually inappropriate drunk man.

70. This Delta flight attendant stated, "I already know," but brushed off their concerns, telling them not to worry and walked away.

71. Despite pleading with multiple Delta flight attendants to cut him off from alcohol, the intoxicated Delta passenger returned from throwing up in the bathroom with a glass of red wine.

72. Distraught that her attempts to protect herself and her daughter were not working, A.A. called over yet another flight attendant for the fourth time.

73. Again, A.A. pleaded for help but the flight attendant nonchalantly said "oh shoot I just gave him more wine."

74. A.A. was terrified and appalled that the Delta flight attendants were not only not protecting her and her young daughter, but they were actually encouraging it by continuing to serve the intoxicated Delta passenger alcohol after A.A. had not only notified the Delta flight attendants that he had been touching her underage daughter and was belligerent and scaring them, but the flight attendants had even commented on his vomiting.

75. A.A and N.A. asked to speak to the supervisor and the head flight attendant came over.

76. A.A. and N.A. yet again pleaded for help recounting the events of the flight, their safety concerns, his inappropriate touching, the amount of alcohol provided by Delta, and his obvious intoxicated state.

77. The head Delta flight attendant went to the intoxicated Delta passenger and said "the ladies next to you are complaining that you are bothering them. Stop talking to them" and then she walked away, leaving A.A. and N.A. alone seated in the row with the drunk and belligerent intoxicated Delta passenger.

78. As soon as the flight attendant walked away, the intoxicated Delta passenger started screaming at N.A. and A.A. yelling things like, "those fucking bitches, who do they think they are" and "cunts."

79. Despite Delta flight attendants being within earshot of the screaming intoxicated Delta passenger, no one came to their aid.

80. N.A. was terrified that no one was helping her or her mother find safety and that they were stuck on this aircraft, in a small row alone with the intoxicated Delta passenger.

81. N.A. began having a panic attack.

82. A.A. was also fearful for herself and her daughter, but Delta made it clear that there was no help coming and they needed to survive the flight seated next to the intoxicated Delta passenger.

83. In an attempt to help N.A. with the panic attack, A.A. pulled N.A.'s head down on her lap to shelter her from the intoxicated Delta passenger.

84. Only a few minutes after N.A. placed her head in her mother's lap did N.A. feel the intoxicated Delta passenger's clammy fingers underneath her shirt climbing up her back.

85. N.A. was frozen as she felt the intoxicated Delta passenger's hand fingering her bra strap and moving over her body.

86. N.A. was trembling, petrified and crying and finally got the courage to jump out of the seat and out of his reach.

87. With N.A. out of her seat, the intoxicated Delta passenger reached over and put his hand on A.A.'s leg,

88. The intoxicated Delta passenger began moving his hand up the inside of A.A.'s thigh towards her vagina.

89. A.A. screamed at the intoxicated Delta passenger to stop, and A.A. sprinted out of her seat.

90. A.A. and N.A. both went to the back galley where the flight attendants were congregated, mere feet from the assault.

91. A.A. and N.A. explained that the intoxicated Delta passenger had been inappropriately touching them and they could not return to their seats due to their fear and safety.

92. They demanded their seats be changed.

93. Each Delta crew member agreed that it was horrible but reiterated that there was nothing they could do.

94. Even after knowing that they had been sexually assaulted, the Delta flight attendants demanded N.A. and A.A. return to their seats next to the intoxicated Delta passenger.

95. N.A. and A.A. refused and asked to speak to the Captain.

96. The head Delta flight attendants told N.A. and A.A. that they were lucky today because the pilot was in a good mood so she would go and speak with him.

97. As the head Delta flight attendant walked away to speak to the pilot, one of the other flight attendants said she felt bad for N.A. and A.A.

98. The flight attendant told them that alcohol was not supposed to be served before the flight had departed and someone had unlocked the liquor and served it to the intoxicated Delta passenger, even though it was against Delta policy.

99. This same Delta flight attendant told them that if someone presents as an alcoholic, flight attendants serve them alcohol because it is easier than denying an alcoholic alcohol and it can keep them calm throughout the flight.

100. The head flight attendant returned to N.A. and A.A. after speaking to the pilot, and said there was nothing that they could do and said that A.A. and N.A. needed to return to their seats.

101. Begging for help, they asked the flight attendants if any man would switch seats with them. The Delta flight attendants walked away, but came back five minutes later saying that no one would

switch their seat and that the woman originally assigned to that seat would also not change.

102. Plaintiffs were visibly shaken and afraid to return to their seats.

103. One of the Delta flight attendants told A.A. and N.A. that Delta could contact the police to have the intoxicated Delta passenger arrested by the police when they land, if they wanted.

104. A.A. told the Delta flight attendant that she wanted Delta to contact the police and have the intoxicated Delta passenger arrested.

105. Even though A.A. told the Delta flight attendant that she wanted the police contacted without any reservations or doubts, the Delta flight attendant told A.A. to calm down and think about it and that she would come back.

106. This Delta flight attendant never came back to A.A. for the rest of the flight.

107. Plaintiffs were still visibly shaken and afraid to return to their seats.

108. Nikolaos, a male passenger on the flight ("Nikolaos") was going to the back of the plane when he observed N.A. crying and how upset N.A. and A.A. appeared to be.

109. Nikolaos had not been asked by any Delta flight attendants or staff to switch his seat, nor had he heard any announcements requesting a volunteer to switch seats.

110. After A.A and N.A. told him that the intoxicated Delta passenger had touched both of them, Nikolaos told N.A. to take his seat and he would sit next to the intoxicated Delta passenger for the rest of the flight.

111. Nikolaos then sat for the rest of the flight between A.A. and the intoxicated Delta passenger.

112. When the intoxicated Delta passenger woke up, he asked Nikolaos, "where is the beautiful girl? Go back to your seat and let the beautiful girl sit next to me like before."

113. Although he was not related to N.A., Nikolaos wanted to protect her and her mother so he told the intoxicated Delta passenger to shut up because she was his niece.

114. The intoxicated Delta passenger stopped talking.

115. Although N.A. was grateful to Nikolaos for switching seats, N.A. was panicked for the rest

of the flight, sitting next to strangers and isolated from her mother.

116. At the conclusion of the flight, Delta offered Nikolaos 5,000 SkyMiles for switching seats and called him a hero.

117. At the end of the flight, the Delta flight attendants apologized to A.A. and said that for what A.A. and N.A. had to go through, Delta was offering them 5,000 sky miles as an apology.

118. The FAA Reauthorization Act of 2018 required:
> (1) Each air carrier should put in place policies and procedures to address sexual misconduct, including policies and procedures to –
> (b) facilitate the reporting of sexual misconduct to appropriate law enforcement agencies;
> (c) communicate to personnel and passengers of the air carrier the rights of such individuals with respect to sexual misconduct;
> (d) train personnel of the air carrier to recognize and respond appropriately to, and to notify the appropriate law enforcement agency of, sexual misconduct; and
> (e) ensure other appropriate actions are undertaken to respond effectively to sexual misconduct; and
> (2) individuals who perpetrate sexual misconduct should be held accountable under all applicable Federal and State laws."

119. When the plane landed in Greece, no police were waiting at the gate to arrest the intoxicated Delta passenger.

120. The Delta flight attendants allowed the Delta intoxicated passenger to quickly exit the plane ahead of most of the passengers seated in the back of the plane.

121. As A.A. and N.A. exited the plane, the Delta flight attendants told them that they were sorry that it had happened to them but did not offer them any assistance.

122. When A.A. and N.A. looked around, they did not see any police waiting.

123. Upon information and belief, Delta did not notify any police authorities in Greece or in the United States about the sexual misconduct that had occurred on the Flight.

124. When Plaintiffs requested information about the intoxicated Delta passenger identity so that they could have him arrested Delta protected the intoxicated Delta passenger's identity and refused to give any information to the Plaintiffs.

125. The unwanted advances of the intoxicated Delta passenger combined with the refusal of Delta flight attendants to intervene when requested to do so by Plaintiffs constituted an unexpected event external to Plaintiffs which was beyond the usual and normal operation of the aircraft.

<u>FIRST CAUSE OF ACTION</u>
Negligence

126. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

127. Pursuant to 14 C.F.R. § 121.575, airlines have a duty not to "serve any alcoholic beverage to any person aboard any of its aircraft who… [a]ppears to be intoxicated…"

128. Delta owed Plaintiffs the foregoing duty not to serve the intoxicated Delta passenger alcoholic beverages when it knew or should have known that the intoxicated Delta passenger was intoxicated.

129. Defendant blatantly disregarded that duty.

130. Defendant breached its duty to Plaintiffs by serving alcoholic beverages to the intoxicated Delta passenger who was already visibly intoxicated without regard to the safety and well-being of the other passengers on the aircraft including Plaintiffs.

131. As a direct and proximate result of Defendant's breach of its duty owed to Plaintiffs, Plaintiffs have suffered injuries and damages and are entitled to the relief set forth more fully herein.

132. As a result of Defendant's conduct, Plaintiffs have suffered, and will continue to suffer, extreme mental distress, emotional distress, humiliation, anxiety, depression, embarrassment, loss of self-esteem, insomnia, and have been otherwise greatly injured and severely damaged.

133. As a result of the foregoing, Plaintiffs are entitled to recover compensatory damages and punitive damages in an amount to be determined at trial.

134. Plaintiffs seek an award of pre- and post-judgment interest as permitted by law.

SECOND CAUSE OF ACTION

Civil Rights Violations Under the New York City Human Rights Law
Administrative Code of the City of New York Title 8

135. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

136. Under Title 8 of the New York City Administrative Code, § 8-107(4), it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived … gender… of any person directly or indirectly, to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

137. By failing to protect Plaintiffs from the sexual misconduct of the intoxicated Delta passenger and requiring them to remain seated next to him, Defendant violated Plaintiffs rights under the New York City Human Rights Law.

138. As a result of Defendant's conduct, Plaintiffs have suffered, and will continue to suffer, extreme mental distress, emotional distress, humiliation, anxiety, depression, embarrassment, loss of self-esteem, insomnia, and have been otherwise greatly injured and severely damaged.

139. By virtue of Defendant's actions, Plaintiffs continues to suffer loss and damage.

140. As a result of Defendant's conduct, Plaintiffs have suffered, and will continue to suffer, extreme mental distress, emotional distress, humiliation, anxiety, depression, embarrassment, loss of self-esteem, insomnia, and have been otherwise greatly injured and severely damaged.

141. As a result of the foregoing, Plaintiffs are entitled to recover compensatory damages and punitive damages in an amount to be determined at trial as well as attorneys' fees and costs.

142. Plaintiffs seek an award of pre- and post-judgment interest as permitted by law.

WHEREFORE, Plaintiffs respectfully request that judgment be entered:

1.		Awarding Plaintiffs full and fair compensatory damages in an amount to be determined by the jury; and,

2.		Awarding Plaintiffs full and fair punitive damages in an amount to be determined by the jury; and,

3.		Awarding Plaintiffs reasonable attorneys' fees; and,

4.		Granting such other relief as this Court may deem just and proper.

Dated: New York, New York
July 25, 2023

          BRUSTEIN LAW, PLLC

          _____/s/_____
          Evan Brustein
          299 Broadway, 17th Floor
          New York, NY 10007
          (212) 233-3900

          *Attorney for Plaintiff*